UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEROME POWELL,<br><br>        Petitioner,<br><br>    v.<br><br>JOSEPH LEHMAN,<br><br>        Respondent. | Case No.  C00-5672RJB<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR:**<br>**APRIL 22nd, 2005** |

This habeas corpus action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4.  Petitioner in this action is seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Dkt. #1)

### INTRODUCTION AND SUMMARY OF CONCLUSIONS

Petitioner was a state prisoner sentenced in 1982 to life with the possibility of parole.  He was paroled in 1997 and granted a final discharge on December 15, 2000.  He filed this petition in November 2000 and was "in custody" for the purposes of 28 U.S.C. 2254.  In his Petition for a

REPORT AND RECOMMENDATION
Page - 1

Writ of Habeas Corpus, he challenges his 1982 conviction and sentence on the following grounds:

    1.    Ineffective assistance of appellate counsel.

    2.    Ineffective assistance of trial counsel.

    3.    Petitioner was limited in the evidence he could present in the State Superior Court reference hearing regarding the cause of the victim's death.

(Dkt. # 2.)

Review of the claims shows them to be without merit. This petition should be dismissed with prejudice.

## PROCEDURAL HISTORY

Petitioner plead guilty to first degree murder and first degree kidnaping on October 2, 1979. A motion to withdraw the guilty plea was denied, but that decision was reversed on appeal. On remand, Petitioner plead not guilty, but, was found guilty of first degree murder after a jury trial. The Petitioner appealed, and the conviction and sentence were affirmed on May 31, 1983. State v Powell, 34 Wn. App. 781, 664 P.2d 1(1983). The State Supreme Court denied review on January 6, 1984. State v Powell, 100 Wn. 2d 1035 (1984).

In Petitioner's motion for review to the State supreme court, he argued that:

    1. His right to speedy trial was violated under CrR 3.3;

    2. His right to joinder of a related issue was violated under CrR 4.3(c)(3); and

    2. His right against double jeopardy was violated by the filing of an amended information.

(Dkt. # 21, Exhibit 5, pages 1 and 2.)

On October 24, 1990 Petitioner filed his first state collateral attack with the Court of Appeals for the State of Washington. (Dkt. # 21, Exhibit 6.) In his personal restraint petition he challenged decisions of the Indeterminate Sentence Review Board (ISRB) and not his underlying conviction. (Dkt. # 21, Exhibit 6.) The petition was consolidated with a second petition that also challenged ISRB actions. (Dkt. # 21, Exhibit 8.) On December 4th, 1991 the court of appeals denied the consolidated petitions. (Dkt. # 21, Exhibit 10.)

Petitioner then filed a motion for review with the state supreme court, raising the

REPORT AND RECOMMENDATION
Page - 2

following issues:

> 1. Whether or not the Court of Appeals has committed obvious and probable error by condoning the Board's use of the unconvicted and uncharged crime of kidnaping as a basis for Petitioner Powell's exceptional minimum term, thereby substantially limiting his freedom?
>
> 2. Whether or not the Court of Appeal has committed obvious and probable error by condoning the misinterpretation and mis application of RCW 9.95.010, 9.95.116, and 9.95.170 by the Board when setting the exceptional minimum term of Petitioner Powell, thereby sanctioning the Board's departure from its statutory authority and the accepted and usual course of proceedings, as provided by statute?

(Dkt. # 21, Exhibit 13.)

The state supreme court denied review (Dkt. #21, Exhibit 14) and a subsequent motion to modify. (Dkt # 21, Exhibit 17.)

Petitioner filed a third personal restraint petition with the state court of appeals on September 6, 1996. (Dkt. # 21, Exhibit 18.) He raised the following issues:

> 1. A violation of his right to effective assistance of trial and appellate counsel, as guaranteed by the V, VI, and XIV Amendments of the U.S. Constitution and Article 1, §§ 3 and 22 of the Washington State Constitution;
>
> 2. A violation of his right to a fair trial, as guaranteed by the V, VI, and XIV Amendments of the U.S. Constitution and Article 1 §§ 3 and 22 of the Washington State Constitution; and
>
> 3. Undue delay in his consideration for parole by the ISRB because he is not being credited with his pre-conviction jail time, as required by State v. Phelan, 100 Wn.2d 508, 671 P.2d 212 (1983) and guaranteed to him by the U.S. Constitution, Amend. V. and Article 1, § 3 of the Washington State Constitution.

(Dkt. # 21, Exhibit 18, pages 25 and 26.)

The court of appeals directed the superior court to hold a reference hearing. The superior court concluded that petitioner received a fair trial. (Dkt. # 21, Exhibit 25.) Based on the Superior Court's Findings of Fact Re: Reference Hearing, the court of appeals dismissed the petition on January 10, 2000. (Dkt. # 21, Exhibit 26.)

Petitioner filed a motion for discretionary review with the state supreme court on January 28, 2000. (Dkt. # 21, Exhibit 28.) The motion for review was denied March 17, 2000. The

REPORT AND RECOMMENDATION
Page - 3

1  Commissioner of the Washington Supreme Court found the petition to be untimely and therefore
2  procedurally barred under R.C.W. 10.73.090 and 10.73.130. (Dkt. # 21, Exhibit 30.) The
3  commissioner also found that the court of appeals erred in considering the petition as it was
4  procedurally barred. Petitioner filed a motion to modify the commissioner's ruling on April 11,
5  2000, which was denied on June 6, 2000. (Dkt. #32, Exh. 11.) Petitioner filed his habeas corpus
6  petition November 14, 2000.

7  The petition was dismissed by this court as being procedurally barred. (Dkt. # 29). That
8  decision was appealed and the Ninth Circuit has remanded with the instruction that "to the extent
9  that Powell's federal claims were contained in his state personal restraint petition filed in 1996,
10 Powell has exhausted his state remedies." Powell v. Lehman, 357 F. 3rd 871, 880 (9th Cir. 2004).
11 The petition will therefore be considered on the merits to the extent indicated by the Ninth
12 Circuit. In his Petition for a Writ of Habeas Corpus, he challenges his 1982 conviction and
13 sentence on the following grounds:

  1.   Ineffective assistance of appellate counsel.
  2.   Ineffective assistance of trial counsel.
  3.   Petitioner was limited in the evidence he could present in the State Superior Court reference hearing regarding the cause of the victim's death.

## FACTUAL HISTORY

The state court of appeals summarized the facts surrounding Powell's conviction as follows:

> In early August 1979, a group alternatively called "The Bullets" and "The Family" took Charles Allison, the victim, to a secluded area near Kent, where he was murdered. Jerome Powell was a member of this group. According to the other group members, all of whom pled guilty to lesser offenses, Powell went into some bushes where the victim lay bound and returned a short time later with a blood covered knife.
>
> On August 10, 1979, the State charged Powell with first degree felony murder and first degree kidnapping (sic). On October 2, 1979, the first day of trial, he pled guilty to first degree murder. But before sentencing, he moved to withdraw his plea, but the trial court denied the motion. Powell appealed. This court set aside Powell's guilty plea because the record did not contain sufficient factual basis to sustain the plea and remanded the case to the trial court for entry of a plea. See State v. Powell, 29 Wn. App. 163, 627 P.2d 1337 (1981).
>
> Upon remand, the State charged Powell by an amended information with

REPORT AND RECOMMENDATION
Page - 4

first degree murder. Powell pled not guilty. At trial, the State argued that Powell committed the murder by slitting the victim's throat and in support presented considerable circumstantial evidence. This evidence included extensive testimony from other members of Powell's group and physical evidence of the alleged crime, including photographs of the victim's body and a knife with its sheath, which the State asserts was the murder weapon.

In response, Powell contended the victim's death was not caused by slitting of his throat, but rather by a blow to the victim's head delivered by one of the other group members with a revolver. But while Powell's initial appeal was pending, a prosecutor, Tom Dinwiddie, who was not assigned to the case, mistakenly authorized destruction of some physical evidence from Powell's case, including the revolver allegedly used to strike the victim's head and the knife and sheath. Dinwiddie authorized the destruction in April 1981, before this court remanded Powell's case. As Dinwiddie testified at the 1982 trial, he gave the authorization believing the evidence belonged to one of his own cases.

The jury found Powell guilty of first degree murder. The trial court sentenced Powell to a maximum life sentence with a mandatory minimum sentence of 20 years. Powell appealed his conviction. This court affirmed his conviction, State v. Powell, 34 Wn. App. 791, 664 P.2d (1983), review denied, 100 Wn.2d 1035 (1984), and also denied Powell's motion for reconsideration.

(Dkt. # 21, Exhibit 5).

## STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

A.    Ineffective Assistance of Appellate Counsel

A claim of ineffective assistance of counsel at the appellate stage is based on a violation of a petitioner's Fourteenth Amendment rights as opposed to a claim of ineffective assistance of trial counsel which is based on a Sixth and Fourteenth Amendment rights. Martinez v. Court of Appeals of California, 528 U.S. 152 (2000). The constitutional rules regarding what constitutes

REPORT AND RECOMMENDATION
Page - 5

1  effective assistance of trial counsel do not automatically extend to appellate counsel. The test for
2  determining if counsel was effective however is still a two prong test. The petitioner must show
3  that counsel's performance fell below an objective standard of reasonableness and that the
4  petitioner was prejudiced.   Roe v Flores-Ortega, 528 U.S. 470 (2000).

5       Petitioner argues that appellate counsel was ineffective because counsel did not order the
6  entire transcript before filing an appeal. (Dkt. # 2, pages 9 to 13). It is uncontested that a person
7  appealing a criminal conviction is entitled to a copy of the transcript. Further, a person filing a
8  direct appeal from a criminal conviction is entitled to counsel who acts as an advocate for them.
9  Davis v. Kramer, 167 F.2d 494 (9th Cir. 1997); citing Anders v. State of California, 386 U.S. 738
10 (1967). Petitioner argues it is therefore mandatory for counsel to have ordered and reviewed the
11 entire transcript before filing an appeal. (Dkt. # 2, pages 9 to 11).

12      While there is a logical progression to petitioner's argument, the court is not willing to
13 state that in all cases it is mandatory to order the entire transcript of a criminal case to provide
14 effective assistance of counsel. Nor could this court say it was clearly established law that the
15 complete transcript had to be ordered in every case.

16      Even were the court to assume that by not ordering the entire transcript counsel's
17 performance was objectively below the required level, the claim fails, as petitioner does not show
18 that he was prejudiced. The state court of appeals considered this issue and stated:

> The exercise of independent judgment in deciding which issues form the basis of a successful appeal is at the heart of the attorney's role in our legal process. In re Personal Restraint of Lord, 123 Wash.2d 296, 314, 868 P.2d 835 (1994). Consequently, the failure to raise all possible nonfrivolous issues on appeal does not constitute ineffective assistance of counsel. Lord, 123 Wash.2d at 314, 868 P.2d 835. To prevail on an appellate ineffective counsel claim, the petitioner "must show the merit of the underlying legal issues his appellate counsel failed to raise or raised improperly and then demonstrate actual prejudice." Lord, 123 Wash.2d at 314, 868 P.2d 835. Citing Eskridge v. Washington State Bd. of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) and Entsminger v. Iowa, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967), Powell argues that appellate counsel provided ineffective assistance in failing to request a full transcript. These authorities, however, do not support his claim, nor do we find case law which stands for the same. Powell does not demonstrate prejudice, and his argument fails.

1   This court agrees with the state court of appeals analysis and petitioner has failed to show
2  that the state courts decision was contrary to, or involved an unreasonable application of, clearly
3  established federal law, as determined by the Supreme Court; or resulted in a decision that was
4  based on an unreasonable determination of the facts in light of the evidence presented to the state
5  courts. This issue is without merit and should be **DISMISSED**.

6   B. Ineffective Assistance of Trial Counsel.

7   The test set forth in Strickland v. Washington, 466 U.S. 688 (1984) controls the analysis.
8  The test has two prongs. First petitioner must show that counsel's performance fell below an
9  objective standard of reasonableness. Id. at 686. Second, the petitioner must show that there is a
10 reasonable probability that, but for the error, the outcome or verdict would have been different.
11 Id. at 694.

12   Petitioner argues trial counsel was ineffective in five areas:

13   1.   Allowing improper cross examination of Mr. Powell.
14   2.   Failing to object to improper closing argument.
15   3.   Agreeing to allow petitioner to be shackled at trial.
16   4.   Failing to bring pretrial motions to exclude evidence.
17   5.   Failing to investigate the route taken to the murder scene.
18 (Dkt. # 2).

19   1.   Cross examination of Powell.

20   This issue was first raised in the Court of Appeals by a motion and supplemental brief filed
21 on behalf of the petitioner on August 10, 1999. (Dkt. #2, Exhibit 6.) In his Motion for
22 Discretionary Review filed in the Supreme Court of the State of Washington, the petitioner
23 admitted that on August 10, 1999 the Court of Appeals denied the petitioners motion to add an
24 additional issue to his personal restraint petition. (Dkt. #2, Exhibit 8, page 5.)  Pursuant to the
25 directive of the Ninth Circuit Court of Appeals, this issue was not contained in the 1996 state
26 personal restraint petition and therefore it is not before this court. Additionally, it is the Court's
27 view that this issue is also procedurally barred due to the order of the State Court of Appeals.
28

REPORT AND RECOMMENDATION
Page - 7

2.  Closing argument.

In deciding this issue the state court of appeals held:

### 4. Closing Argument

> Powell next contends that his trial counsel was deficient in failing to object to prosecutorial comments regarding witness credibility and to misstatements of facts during closing argument. Powell's contention is without merit.
> A prosecutor may not offer a personal opinion regarding a witness' veracity, but may comment on witness credibility. State v. Neidigh, 78 Wn. App. 71, 74, 895 P.2d 423 (1995). Our review of the State's closing argument discloses that counsel gave his opinion regarding testimony from several witnesses by stating that a particular witness "is entirely credible" or "is the only credible witness," while other times stating that testimony is "entirely fanciful" or "completely transparent." These remarks were more than just comments on witness veracity. They were estimations and conclusions about the ultimate worthiness of the testimony. Thus, in failing to object to the prosecutor's opinions, defense counsel performed deficiently. Nonetheless, Powell does not demonstrate that this error was prejudicial, that is, but for this deficiency, the jury would have returned a different verdict, particularly in light of substantial testimony from other witnesses and other circumstantial evidence inculpating Powell. Powell's contention fails.

(Dkt. # 2, Exhibit 3, pages 8 and 9).

There is nothing before this court that would lead to the conclusion that the outcome in this case would have been any different had this misconduct not occurred. The evidence against Mr. Powell includes statements by multiple witnesses. The evidence included Eva Wolfe's testimony that Mr. Powell told her she needed to clean her car. Ms. Wolfe testified there was blood in the car. (Trail Transcript, Volume II, page 315). This testimony contradicted Mr. Powell's testimony that he helped the victim get into his own car and drive away.

There was also testimony from two people who allegedly accompanied Mr. Powell to the murder scene and then remained with the cars while Mr. Powell took the victim into the woods. These persons testified that Mr. Powell returned to the cars to obtain a knife, went back into the woods and later returned with a bloody knife. One of the people testified Mr. Powell stated he had stabbed the victim three times in the throat while the other victim testified that Mr. Powell said he had slit the victim's throat. (Testimony of Robert Razor and Donald Clark, Trial Transcript, Volume II).

The petitioner has failed to show he is entitled to any relief on this claim and the claim should be **DISMISSED**.

REPORT AND RECOMMENDATION
Page - 8

1       3.      <u>Restraint of the Petitioner at Trial.</u>

      The trial transcript is now before the court and close scrutiny not only of the trial transcript but also of the pleadings filed on behalf of the petitioner lead to the conclusion that this issue is without merit. The transcript does show that the court had in camera conversations with counsel and security personnel regarding security for the trial. Additionally, during jury orientation the judge made the following statements to the voir dire panel:

> The defendant is in custody and many of the witnesses who the state intends to call are also in custody; some of them from state institutions. Because of this and not because of any particular feature of it, but because in my judgment it is and should be a routine matter, we have determined to have certain routine security precautions taken in this case. They should not concern you at all. They are simply for the purpose of seeing that we have an orderly trial with no disturbances or no problems. We are not concerned with the defendant. The concern, if there is any concern, is that when people come down from the institution, sometimes they may have some friends out there who may be interested in the matter and who may want to show up for one reason or another, so we are making sure that we don't have any difficulties about that.

(Verbatim Report of Proceedings, Volume I, page3.)

> Ladies and Gentlemen, one other matter that I want to mention to you in connection with security and I neglected to do so. I told you that the defendant is in custody and several of the witnesses are in custody. Now, you should understand that when a person is in custody, there are routine procedures that apply regardless of what the situation is and one of those routine procedures is that when they are not in court and they are not in the jail, they have to be handcuffed. If you encounter anybody, we try to avoid this, but if you should see either Mr. Powell or any witnesses or anybody like that in handcuffs, it's a routine security precaution required of everyone in custody and has nothing to do whatever with anything else. Please understand that.

(Verbatim Report of Proceedings, Volume I, page 14.)

      Other than this reference in the record, nothing has been called to the court's attention regarding the use of any type of restraint on the petitioner while he was present in the courtroom.

      During voir dire defense counsel brought a motion to impanel a new jury, based in part, on statements made by the court regarding security issues. Defense counsel agreed that some mention of security needed to be made but she objected to the "manner in which we have presented the security issue in combination with the custody of persons that will be appearing in court and this environment of street crime and a gang to the jury. I feel that the net effect is to

REPORT AND RECOMMENDATION
Page - 9

intimidate the jurors and to prejudice them unduly with respect to Mr. Powell." (Verbatim Report of Proceedings, Vol. A, page 33.)  The remaining colloquy between the court and counsel is as follows:

| | | |
|---|---|---|
| THE COURT: | | Well, I think I should get a little more detail from you, Counsel. I will have a few remarks to make on the subject in a moment.  Are you objecting to the particular security arrangements? |
| MS. MANDELL: | | No, I am not.  I don't feel that it would be my position to object to security arrangements.  I am certainly no expert in security. |
| THE COURT: | | Is it fair to say that, in fact, the reason we have security is that the court invited counsel to indicate–counsel to indicate whether they felt it was appropriate and that you did feel it was appropriate, as well as Mr. Ackerman? While you are thinking about it, is it also fair to say that you are the source of some of the information upon which the security decisions have been made? |
| MS. MANDELL: | | Your Honor, I can't comment on that in open court.  I have no objections to the fact—I understand the reasons for the security.... |

(Verbatim Report of Proceedings, Vol. A, page 33.)

This colloquy shows that defense counsel was aware of the reasons for the court taking security precautions.  While this court finds nothing in the record to support the conclusion that the defendant appeared in the courtroom and before the jury in handcuffs, the state court of appeals considered this issue and in its unpublished opinion found the following:

> A criminal defendant has a constitutional right to appear before a jury free of shackles, unless some impelling necessity demands restraint. <u>State v. Breedlove</u>, 79 Wash.App. 101, 114, 900 P.2d 586 (1995). Here, before trial, the court judge conferred in camera with defense counsel, the prosecutor, and Tacoma Police officers to discuss security measures for the trial. During these discussions, the court was informed of an alleged plan by Powell's brother, Teddy Powell, to "break out Jerome Powell during the course of the trial because 'Jerome Powell was not going back to prison.' " In addition, as deputy prosecutor Ackerman states in his declaration, the police strongly urged the judge, attorneys, and other courtroom personnel to wear bullet proof vests during the trial because "there was cause for serious concern." Defense counsel did not object to shackling Powell for the trial. Under the circumstances presented to the court, counsel's consent to shackling Powell before the jury was not objectively unreasonable and this argument fails.

(Dkt. #2, Exhibit 2, page 12.)

REPORT AND RECOMMENDATION
Page - 10

1   Petitioner has failed to show that the ruling of the state court of appeals on this issue was
2 contrary to, or involved an unreasonable application of, clearly established federal law, as
3 determined by the Supreme Court; or resulted in a decision that was based on an unreasonable
4 determination of the facts in light of the evidence presented to the state courts.  In fact, the
5 expanded record now supports the decision of the state court of appeals and shows that counsel,
6 after in camera discussion, made no objections regarding security issues.  Counsel has failed to
7 show trial counsel acted unreasonably.  This issue is without merit and should be **DISMISSED.**

8   4.   Pre trial motions to exclude evidence.

9   This argument was not raised in the petitioners 1996 personal restraint petition before the
10 court of appeals.   A challenge to the admission of autopsy photographs was made but the issue
11 there was the admissibility of the evidence, not ineffective assistance of counsel.  (Dkt. # 21,
12 Exhibit 3,  argument section 1).  Now the argument is that counsel was ineffective in not moving
13 to exclude everything except the following facts:

14   1.  A group of people were together on August 4th, 1979.
15   2.  Charles Alison threatened to take Carol Ngirmekur's baby.
16   3.  There were "discussion" with Mr. Alison and he was warned to leave the baby alone.
17   4.  The defendant wrestled with the victim in defending Carol Ngirmekur.
18   5.  Mr. Alison was hit on the head.
19   6.  Mr. Alison was later found in the Green River Area.
20 (Dkt. # 2,  page 24).

21   When the Ninth Circuit remanded this case it stated "[t]herefore, to the extent that
22 Powell's federal claims were contained in his personal restraint petition filed in 1996. Powell has
23 exhausted his state remedies." Powell v. Lambert, 357 F. 3rd 871, 880 (9th Cir. 2004)   This claim
24 was not in the 1996 petition and will not be considered by this court.

25

26   5.   Route to the murder scene.
27   Petitioner argues that trial counsel was ineffective in not investigating and proving the
28

REPORT AND RECOMMENDATION
Page - 11

route taken to the murder scene. The state court of appeals was presented with this issue and held:

### 5. Investigation of Route to Murder Scene

> Powell next asserts his trial counsel acted deficiently in failing to investigate the route Powell allegedly took to the murder scene. Powell maintains that trial counsel would have discovered information leading to impeachment of one of the State witnesses. Powell also maintains that he had an alibi.
>
> The presumption of effective assistance may be overcome if counsel failed to sufficiently investigate the facts in preparing for trial. State v. Maurice, 79 Wash.App. 544, 552, 903 P.2d 514 (1995). In the present case, the evidence before the court did not conclusively establish the route to the murder scene or the duration of travel. Witnesses gave varying accounts of the route and the time traveled between Tacoma and the murder scene. Therefore, even if Powell's counsel had investigated Powell's route, such investigation would not have conclusively established the route or time. Even assuming, as Powell submits, that the investigation would have further corroborated his account, this evidence would have been compared with other accounts by other witnesses. It cannot be said that the failure to investigate the route was deficient or that it prejudiced Powell's defense such that the trial's outcome would have been different.

(Dkt. # 21, Exhibit 2, pages 9 and 10.)

Review of the testimony shows the state courts of appeals decision to be factually correct. In the habeas petition now before the court the petitioner does not argue why the state court's ruling is contrary to clearly established law. Indeed, the argument made is that failure to investigate is "per se" ineffective assistance of counsel. While this may be true of a complete failure to investigate, it is not a correct assertion as to the facts of this case. Petitioner fails to show the ruling of the state court of appeals was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. This issue should be **DISMISSED.**

    C.    <u>Petitioner was limited in the evidence he could present in the state superior court reference hearing regarding the cause of the victim's death</u>.

Petitioner complains that the reference hearing was limited to cause of death and destruction of evidence. The chief complaint is that defense counsel was prevented from exploring evidence that trial counsel was ineffective. (Dkt. # 2). This issue was not contained in

REPORT AND RECOMMENDATION
Page - 12

1  the 1996 personal restraint petition and therefore will not be considered. <u>Powell v. Lambert</u>, 357
2  F.3rd 871, 880 (9th Cir. 2004).

3  <u>CONCLUSION</u>

4      This petition for writ of habeas corpus should be **DENIED** for the reasons stated above.
5  A proposed order accompanies this Report and Recommendation.

6      Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure,
7  the parties shall have ten (10) days from service of this Report to file written objections. *See also*
8  Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes
9  of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule
10  72(b), the clerk is directed to set the matter for consideration on **April 22nd 2005**, as noted in the
11  caption.

12      DATED this 18th day of March, 2005.

                                           /s/ Karen L. Strombom
                                           Karen L Strombom
                                           United States Magistrate Judge