1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEROME POWELL,

                Petitioner,

    v.

JOSEPH LEHMAN,

             Respondent.

Case No. C00-5672RJB

ORDER DENYING
PETITION FOR WRIT OF
HABEAS CORPUS

This matter comes before the court on the Report and Recommendation of the Magistrate Judge. Dkt. 54.  The court has reviewed the entire record de novo.

PETITION FOR WRIT OF HABEAS CORPUS

In this petition for writ of habeas corpus, petitioner alleges that his constitutional rights were violated because he received constitutionally deficient representation at trial and on appeal, and that he should have been afforded the opportunity in the state court reference hearing to present evidence regarding the cause of the victim's death.  Dkt. 1, Attachment at 4-5.  Petitioner also requests an evidentiary hearing so that he can develop facts regarding ineffective assistance of his trial and appellate counsel, and regarding the cause of the victim's death.  *Id*. at 5.

PROCEDURAL HISTORY

Petitioner pleaded guilty to first degree murder and first degree kidnaping on October 2, 1979.  A motion to withdraw the guilty plea was denied, but that decision was reversed on appeal.  On remand, Petitioner pleaded not guilty, but was found guilty of first degree murder after a jury trial.  Petitioner appealed, and the conviction and sentence were affirmed on May 31, 1983.  *State v Powell*, 34 Wn. App.

781 (1983).  In his motion for review to the Washington Supreme Court, petitioner argued that (1) his right to speedy trial was violated under Washington CrR 3.3; (2) his right to joinder of a related issue was violated under Washington CrR 4.3(c)(3); and (3) his right against double jeopardy was violated by the filing of an amended information.  Dkt. 21, Exh. 5, at 1-2.[1]  The Washington Supreme Court denied review on January 6, 1984.  *State v Powell*, 100 Wn. 2d 1035 (1984).

On October 24, 1990, Petitioner filed his first state collateral attack with the Court of Appeals for the State of Washington.  *Id.*, Exh. 6.  In his personal restraint petition, he challenged decisions of the Indeterminate Sentence Review Board (ISRB), but did not challenge his underlying conviction.  *Id.*  The petition was consolidated with a second petition that also challenged ISRB actions.  *Id.*, Exh. 8.  On December 4, 1991, the Washington Court of Appeals denied the consolidated petitions.  *Id.*, Exh. 10. Petitioner then filed a motion for review with the Washington Supreme Court, which was denied, as was a motion to modify.  *Id.*, Exhs. 14 & 17.

On September 6, 1996, petitioner filed a third personal restraint petition with the Washington Court of Appeals, raising the claims that are relevant to this petition for writ of habeas corpus.  *Id.*, Exh 18.  In that personal restraint petition, petitioner raised the following issues:

1. A violation of his right to effective assistance of trial and appellate counsel, as guaranteed by the V, VI, and XIV Amendments of the U.S. Constitution and Article 1, §§ 3 and 22 of the Washington State Constitution;

2. A violation of his right to a fair trial, as guaranteed by the V, VI, and XIVAmendments of the U.S. Constitution and Article 1 §§ 3 and 22 of the Washington State Constitution; and

3. Undue delay in his consideration for parole by the ISRB because he is not being credited with his pre-conviction jail time, as required by *State v. Phelan*, 100Wn.2d 508, 671 P.2d 212 (1983) and guaranteed to him by the U.S. Constitution, Amend. V. and Article 1, § 3 of the Washington State Constitution.

*Id.*, Exh. 18 at 25-26.

The Washington Court of Appeals directed the superior court to hold a reference hearing. Following the reference hearing, the superior court concluded that petitioner received a fair trial.  *Id.*, Exh. 25.  Based on the Superior Court's Findings of Fact Re: Reference Hearing, the Washington Court of Appeals dismissed the petition on January 10, 2000.  *Id.*, Exh. 26.

---

[1] As the state court record (Dkt. 21) was unable to be located, counsel for respondent was directed to resubmit a copy of the state court record (*see* Dkt. 53), which was received on December 3, 2004.  This copy was not assigned a new docket number and retains the designation of Docket 21 in this case.

On January 28, 2000, Petitioner filed a motion for discretionary review with the Washington Supreme Court. Dkt. 21, Exh. 28. On March 17, 2000, the Commissioner of the Washington Supreme Court found the petition to be untimely and therefore procedurally barred under R.C.W. 10.73.090 and 10.73.130. *Id.*, Exh. 30. The Commissioner also found that the Court of Appeals had erred in considering the petition as it was procedurally barred. Petitioner filed a motion to modify the commissioner's ruling on April 11, 2000, which was denied on June 6, 2000. *Id.*, Exhs. 31 & 36.

Petitioner filed his federal habeas corpus petition November 14, 2000. The petition was dismissed by this court as being procedurally barred. Dkts. 28 & 29. That decision was appealed and the Ninth Circuit has remanded with the instruction that "to the extent that Powell's federal claims were contained in his state personal restraint petition filed in 1996, Powell has exhausted his state remedies." *Powell v. Lehman*, 357 F. 3rd 871, 880 (9th Cir. 2004).

The petition will therefore be considered on the merits to the extent indicated by the Ninth Circuit.

## FACTUAL HISTORY

Washington Court of Appeals summarized the facts surrounding petitioner's conviction as follows:

In early August 1979, a group alternatively called "The Bullets" and "The Family" took Charles Allison, the victim, to a secluded area near Kent, where he was murdered. Jerome Powell was a member of this group. According to the other group members, all of whom pled guilty to lesser offenses, Powell went into some bushes where the victim lay bound and returned a short time later with a blood covered knife.

On August 10, 1979, the State charged Powell with first degree felony murder and first degree kidnapping (sic). On October 2, 1979, the first day of trial, he pled guilty to first degree murder. But before sentencing, he moved to withdraw his plea, but the trial court denied the motion. Powell appealed. This court set aside Powell's guilty plea because the record did not contain sufficient factual basis to sustain the plea and remanded the case to the trial court for entry of a plea. *See State v. Powell*, 29 Wn. App. 163, 627 P.2d 1337 (1981).

Upon remand, the State charged Powell by an amended information with first degree murder. Powell pled not guilty. At trial, the State argued that Powell committed the murder by slitting the victim's throat and in support presented considerable circumstantial evidence. This evidence included extensive testimony from other members of Powell's group and physical evidence of the alleged crime, including photographs of the victim's body and a knife with its sheath, which the State asserts was the murder weapon.

In response, Powell contended the victim's death was not caused by slitting of his throat, but rather by a blow to the victim's head delivered by one of the other group members with a revolver. But while Powell's initial appeal was pending, a prosecutor, Tom Dinwiddie, who was not assigned to the case, mistakenly authorized destruction of some physical evidence from Powell's case, including the revolver allegedly used to strike the victim's head and the knife and sheath. Dinwiddie

authorized the destruction in April 1981, before this court remanded Powell's case.  As Dinwiddie testified at the 1982 trial, he gave the authorization believing the evidence belonged to one of his own cases.

The jury found Powell guilty of first degree murder.  The trial court sentenced Powell to a maximum life sentence with a mandatory minimum sentence of 20 years.  Powell appealed his conviction.  This court affirmed his conviction, *State v. Powell*, 34 Wn. App. 791, 664 P.2d (1983), *review denied*, 100 Wn.2d 1035 (1984), and also denied Powell's motion for reconsideration.

Dkt. 21, Exh. 3.

## STANDARD FOR HABEAS REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).  A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

## STANDARD FOR EVIDENTIARY HEARING

Under 28 U.S.C. § 2254, if a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.  28 U.S.C. §2254(e)(2)(A) and (B).

In *Insyxiengmay v. Morgan*, 2005 WL 712483, *10-11 (9th Cir. Wash. 2005), the Ninth Circuit set out the process for determining whether an evidentiary hearing is warranted under 28 U.S.C. § 2254:

Under the amended statutory scheme, a district court presented with a request for an evidentiary hearing ... must determine whether a factual basis exists in the record to support the petitioner's claim. If it does not, and an evidentiary hearing might be appropriate, the court's first task in determining whether to grant an evidentiary hearing is to ascertain whether the petitioner has "failed to develop the factual basis of a claim in State court." If so, the court must deny a hearing unless the applicant establishes one of the two narrow exceptions set forth in section 2254(e)(2)(A) & (B). If, on the other hand, the applicant has not "failed to develop" the facts in state court, the district court may proceed to consider whether a hearing is appropriate, or required under *Townsend [v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) ].  *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir.1999).  In *Townsend*, the Supreme Court concluded that a defendant is

1   entitled to a federal evidentiary hearing on his factual allegations if: (1) the merits of the factual
2   dispute were not resolved in the state hearing; (2) the state factual determination is not fairly
    supported by the record as a whole; (3) the fact-finding procedure employed by the state court was
3   not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly
    discovered evidence; (5) the material facts were not adequately developed at the state-court
4   hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas
    applicant a full and fair fact hearing. 372 U.S. at 313. Assuming that the petitioner has not failed to
5   develop his claim and can meet one of the *Townsend* factors, "[a]n evidentiary hearing on a habeas
    corpus petition is required whenever petitioner's allegations, if proved, would entitle him to relief."
6   *Turner v. Marshall*, 63 F.3d 807, 815 (9th Cir.1995) (citations omitted). [FN6] The petitioner's
    allegations need only amount to a colorable claim. *See Beaty v. Stewart*, 303 F.3d 975, 993 (9th
7   Cir.2002) (citing *Townsen*d, 372 U.S. at 313); see also, *Phillips v. Woodford*, 267 F.3d 966, 973
    (9th Cir.2001) ("Where a petitioner raises a colorable claim [to relief], and where there has not
8   been a state or federal hearing on this claim, we must remand to the district court for an evidentiary
    hearing."). In sum, for a post-AEDPA petitioner to receive an evidentiary hearing in federal court,
9   he must first show that he has not failed to develop the factual basis of the claim in the state courts:
    if he has failed, he must meet one of the two narrow exceptions stated in the statute. *See* 28 U.S.C.
10  § 2254(e)(2)(A)-(B). Then he must meet one of the Townsend factors and make colorable
    allegations that, if proved at an evidentiary hearing, would entitle him to habeas relief.

11  *Insyxiengmay v. Morgan*, 2005 WL 712483, *10-11 (9th Cir. Wash. 2005). Under AEDPA, "a failure to

12  develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater

13  fault, attributable to the prisoner or the prisoner's counsel." *Id.* at *11, citing *Williams v. Taylor*, 529 U.S.

14  420, 432 (2000).

15                              CLAIMS AND ARGUMENTS

16          Petitioner sets forth three grounds supporting his petition for habeas relief. First, petitioner

17  contends that his appellate counsel was constitutionally deficient because he did not order the entire trial

18  transcript, and, as a result, meritorious issues were not raised on appeal. Petitioner contends that, had

19  these issues been raised, he would have been entitled to a more favorable standard of review than he

20  received when he raised the same issues in a personal restraint petition. Second, petitioner claims that his

21  trial counsel was deficient in agreeing to have petitioner shackled in front of the jury, in failing to object to

22  the prosecutor's improper cross examination of petitioner, in failing to object to prosecutor's improper

23  statements as to his personal opinion of the credibility of the witnesses, in failing to investigate petitioner's

24  alibi witnesses by not interviewing Judy Hampton McDonald and Jessie J. Beard and not investigating the

25  route to the scene of the crime, and in not bringing pretrial motions in limine to exclude irrelevant

26  prejudicial evidence. Third, petitioner claims that if he had had the opportunity at his state court reference

27  hearing of calling three witnesses, and that, had he presented testimony from these witnesses, he would

28  have proven that he did not cause Mr. Allison's death. In his objections to the Report and

    Recommendation, petitioner contends that the Report and Recommendation fails to address the issue of

1  whether he was denied the right to confront and cross-examine his codefendant.  Dkt. 55, at 12-13.

2        In his response to the objections, respondent contends that (1) petitioner has failed to show that

3  trial counsel's representation was unreasonably deficient and prejudicial; (2) petitioner has failed to show

4  that appellate counsel was deficient and prejudicial; and (3) petitioner's confrontation and cross-

5  examination claims was not raised in the habeas petition.  Dkt. 56.

6                                          DISCUSSION

7        **1.  Ineffective Assistance of Trial Counsel**

8        In order to establish ineffective assistance of counsel, a petitioner must show that counsel's

9  representation fell below an objective standard of reasonableness and that the deficient performance

10  affected the result of the proceeding.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  There is a

11  strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

12  *Strickland*, 466 U.S. at 689.  In order to demonstrate prejudice, the defendant must show there is a

13  reasonable probability that but for counsel's unprofessional errors, the result would have been different.

14  *Strickland*, 466 U.S. at 694.  A "reasonable probability" is a probability sufficient to undermine confidence

15  in the outcome.  *United States v. Bagley*, 473 U.S. 667, 682 (1985).

16        Under the first prong of the *Strickland* test, the question is whether counsel's assistance was

17  reasonable under the totality of the circumstances, viewed as of the time of counsel's conduct.  *Strickland*,

18  466 U.S. at 690.  To succeed under the first prong, the petitioner must show the attorney's conduct

19  reflects a failure to exercise the skill, judgment, or diligence of a reasonably competent attorney.  *United*

20  *States v. Vincent*, 758 F.2d 379, 381 (9th Cir.), *cert. denied*, 474 U.S. 838 (1985).

21        Under the second prong, the petitioner must demonstrate prejudice, that but for counsel's

22  unprofessional errors, the result would have been different.  *Strickland*, 566 U.S. at 694.  However, sheer

23  outcome determination is not sufficient to make out a Sixth Amendment violation; a proper prejudice

24  inquiry focuses on whether counsel's errors or omissions rendered the proceeding fundamentally unfair or

25  the result unreliable.  *Lockhart v. Fretwell*, 113 S.C. 838, 842-44 (1993).

26

27

28

**A.  Trial counsel's ineffectiveness in failing to object to prosecutor's improper cross examination of petitioner**

Petitioner claims that his trial counsel was ineffective for not objecting when the prosecutor asked petitioner to comment on whether other witnesses lied.  The Magistrate Judge did not address this claim in the Report and Recommendation.  The claim was arguably exhausted in state court, but the state court declined to reach the merits of the claim.  The court will address the merits of the claim here.

The prosecutor asked the following questions on cross-examination of petitioner:

> Q.    And you didn't go to Kent that morning?
> A.    No.
> Q.    You didn't ask Donald Clark for a knife?
> A.    No.
> Q.    And you didn't cut Charles Allison's throat?
> A.    No.
> Q.    So the people that have been her [sic] during this trial and have said that you did are lying?
> A.    Yes, they are.

Dkt. 3, File 2, Vol. III at 494.

Petitioner claims that his trial counsel should have objected to the last question.  However, his counsel asked petitioner the same question on direct examination:

> Q.    You heard the testimony that you went up to the Green River Road and slit Charles Allison's throat.  Is that true?
> A.    No.
> Q.    Did you kill Charles Allison?
> A.    No.
> Q.    Did you ask anyone else to kill Charles Allison?
> A.    No.

*Id.*, Vol. III at 485.

Petitioner's trial counsel also asked him on direct examination whether testimony that he was second in command in a gang led by his brother was true, and he responded that it was not.  *Id.*, Vol. III at 468.

At the end of cross-examination, the prosecutor asked petitioner the following question:  "So the people that have been her [sic] during this trial and have said that you did are lying?"  Petitioner responded:  "Yes, they are."  *Id.*, Vol. III at 494.

In determining whether counsel's representation fell below an objective standard of reasonableness, the reviewing court will defer to counsel's strategic decision to present, or to forgo, a particular defense theory when the decision falls within the wide range of professionally competent assistance.  *Strickland*,

ORDER
Page - 7

1  466 U.S. at 689; *Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9ᵗʰ Cir. 1995); *United States v. Layton*, 855

2  F.2d 1388, 1419-20 (9ᵗʰ Cir. 1988), *cert. denied* 489 U.S. 1046 (1989; *Campbell v. Kincheloe*, 829 F.2d

3  1453, 1462 (9ᵗʰ Cir. 1987), *cert. denied* 488 U.S. 948 (1988).

4        In this case, where credibility of the witnesses was central to the case, the decision of petitioner's

5  trial counsel to ask petitioner whether testimony of the inculpating witnesses was true was a reasonable

6  strategic decision related to the defense's theory of the case.  Because petitioner's counsel raised the

7  credibility issue by eliciting testimony on direct examination, there was no error in the prosecutor's cross-

8  examining petitioner on the issue.  If anything, trial counsel's decision not to object to the questions on

9  cross-examination emphasized the credibility issues that she had wanted to raise to the jury.  Further, if trial

10  counsel had objected to the prosecutor's question on cross-examination, she likely would have been

11  overruled, since the door had been opened on direct examination.  Accordingly, trial counsel's failure to

12  object to the prosecutor's cross-examination did not fall below an objective standard of reasonableness,

13  nor did any failure to object to those statements affect the result of the proceeding.

14  This claim does not warrant habeas relief.

15        **B. Trial counsel's ineffectiveness in failing to object to prosecutor's improper**

16        **statements in closing argument in which he expressed his personal opinion of the**

17        **credibility of the witnesses**

18        Petitioner maintains that the prosecutor improperly vouched for and against witnesses in the closing

19  argument.

20        In reviewing this claim, the Washington Court of Appeals concluded as follows:

21        Powell next contends that his trial counsel was deficient in failing to object to prosecutorial
          comments regarding witness credibility and to misstatements of facts during closing argument.

22        Powell's contention is without merit.

23        A prosecutor may not offer a personal opinion regarding a witness' veracity, but may
          comment on witness credibility.  *State v. Neidigh*, 78 Wn.App. 71, 74, 895 P. 2d 423 (1995).  Our

24        review of the State's closing argument discloses that counsel gave his opinion regarding that
          counsel gave his opinion regarding testimony from several witnesses by stating that a particular

25        witness "is entirely credible" or "is the only credible witness," while other times stating that
          testimony is "entirely fanciful" or "completely transparent."  These remarks were more than just

26        comment on witness veracity.  They were estimations and conclusions about the ultimate
          worthiness of the testimony.  Thus, in failing to object to the prosecutor's opinions, defense counsel

27        performed deficiently.  Nonetheless, Powell does not demonstrate that this error was prejudicial,
          that is, but for this deficiency, the jury would have returned a different verdict, particularly in light

28        of substantial testimony from other witnesses and other circumstantial evidence inculpating Powell.
          Powell's contention fails.

1

2

3

4

   The prosecutor also made comments regarding the cause of death and Powell's whereabouts on the evening of the murder.  These comments were based upon the testimony of several witnesses and were reasonably drawn form the evidence.  See Hoffman, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991)(in closing argument, prosecution has wide latitude in drawing and expressing reasonable inferences from evidence); State v. McFarland, 73 Wn.App. 57, 65, 867 P.2d 660 (1994)(comments reasonably inferred from evidence do not constitute improper opinion).  Defense counsel did not perform deficiently by failing to object.

5

Dkt. 21, Exh. 3 at 8-9.

6

   The relevant question in evaluating whether prosecutorial misconduct warrants habeas relief is

7

whether the misconduct denied the defendant a fair trial.  Prosecutorial misconduct would deny a

8

defendant a fair trial if the comments so infected the trial with unfairness as to make the resultant

9

conviction a denial of due process.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Improper remarks

10

must be viewed in context, considering the probable effect they may have had on the jury's ability to decide

11

the case fairly.  *United States v. Young*, 470 U.S. 1, 11-12 (1985).

12

   It is improper for the prosecution to vouch for the credibility of a government witness.  *United*

13

*States v. Roberts*, 618 F.2d 530,533 (9th Cir.1980), *cert. denied*, 452 U.S. 942 (1981); *United States v.*

14

*Potter*, 616 F.2d 384, 392 (9th Cir.1979), *cert. denied*  449 U.S. 832 (1980); *United States v. Davis*, 564

15

F.2d 840, 866 (9th Cir.1977), *cert. denied* 434 U.S. 1015 (1978).  Vouching may occur in two ways:  the

16

prosecution may place the prestige of the government behind the witness or may indicate that information

17

not presented to the jury supports the witness's testimony; or the prosecution may make remarks that

18

bolster a witness's credibility by reference to matters outside the record.  *U.S. v. Frederick*, 78 F.3d 1370,

19

1378 (9th Cir. 1996).  However, a prosecutor's assertions regarding the relative believability of the state

20

and defense witnesses are not objectionable if they were inferences drawn from the evidence, and not

21

representations of the prosecutor's personal opinion.  *Duckett v. Godinez*, 67 F.3d 734, 742 (1995).

22

   The court has carefully reviewed the closing arguments in this case and will discuss all statements

23

the prosecutor made that would arguably be relevant to his claim that the prosecutor violated his

24

constitutional rights be expressing his personal opinion of the credibility of the witnesses.

25

   –"You folks have heard a lot of testimony from the stand, some of it extremely contradictory, some

26

of it I would characterize as outright lies.  You are going to have to think about what you heard, what you

27

saw, the way that people testified, the totality of the evidence you heard."  Dkt. 3, File 2, Vol. III at 504.

28

The prosecutor's characterization of testimony as outright lies is an inference drawn from the evidence and

does not constitute improper vouching.

ORDER
Page - 9

1    –"Stella Louis' testimony, I would submit to you, is entirely credible.  Dkt. 3, File 2, Vol. III at
2    507.  "But I would submit that certainly given the peculiar nature of the hemming and apparently the
3    controversy it caused between Ms. Louis and Mr. Allison, the identification is very good."  *Id*. at 508.
4    "Their testimony, I would submit to you, is entirely credible."  *Id*.  "Tiny Razor, we would submit, is the
5    only credible witness, at least based on what's transpired in this trial, as to the full events of what took
6    place in the apartment."  *Id*. at 513.  "Well, I would submit to you that's exactly the case with Tiny Razor
7    and Donald Clark.  *Id*. at 519.  "And I would submit to you it's entirely fanciful."  *Id*. at 520.  "Janet
8    Linton, I would submit, based on what you have heard, is an out and out liar."  *Id*.  These comments were
9    offered as propositions to the jury, who were the decisionmakers.  As such, the comments were offered as
10   argument, and they were not improper comments that vouched for the credibility of a witness.  *See* THE
11   AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 4th Ed. 2000 ("Submit:  1. To yield or
12   surrender (oneself) to the will or authority of another.  **2.** To subject to a condition or process.  **3. To**
13   **commit (something) to the consideration or judgment of another. . . .**  4. **To offer as a proposition or**
14   **contention:  *I submit that the terms are entirely unreasonable*.**") (emphasis added).

15   –"Now those four people, I think, have stories that jive [sic]."  Dkt. 3, File 2, Vol. III at 508.  "I
16   think, based on what you saw, Robert Razor is not a criminal mastermind."  *Id*. at 518.  I think that's
17   entirely consistent with Tiny Razor and I'd ask you people to search your memories and what you thought
18   about this man when he was on the stand."  *Id*. at 538.  The only objectionable part of these statements is
19   the phrase "I think."  The statements themselves were made in the context of argument and were inferences
20   from the evidence.  Furthermore, counsel reminded the jury of the court's instructions and reinforced that
21   the jurors were the sole judges of credibility.  *Id*. at 504.  It is clear that no evidence regarding what the
22   prosecutor thinks or feels was presented.  To the extent that these statements may have been objectionable,
23   they did not affect the jury's ability to decide the case fairly.

24       The words "I think" probably weaken an argument rather than strengthen it; the argument would
25   have been more forceful without those two arguably objectionable words.  And, of course, from the jury's
26   standpoint, all of what a lawyer argues appears to be what the lawyer thinks, whether the statements begin
27   with "I think," or not.  Nonetheless, in this case, the prosecutor's use of the words "I think" does not
28   amount to inappropriate vouching.

ORDER
Page - 10

–"I think this woman's biases, her prejudices, and if you will, her outright lies are completely transparent. I don't think any of you folks were taken in by it. I certainly would hope that was not the case." Dkt. 3, File 2, Vol. III at 521. The first sentence of this passage is an inference from the evidence. To the extent that the prosecutor expressed improper personal opinion in the second and third sentences, any such inference was obviated by a later statement the prosecutor made in summation: "Counsel gave you a litany of reasons why people might lie and that's fine. Everyone has motives. There are reasons. As I have indicated those are credibility questions. Those are things you are going to have to resolve." *Id*. at 541.

–"Obviously I had met Mr. Woods at the interview we talked about, a nice enough fellow, an honest fellow. I certainly would not characterize him as sitting here lying in this witness chair. He wasn't." *Id*. at 521. To the extent that this statement is objectionable as expressing the prosecutor's personal opinion of Mr. Woods, it did not affect jury's ability to decide the case fairly, since the statement actually helped the defense.

–"Now if Tiny Razor is a criminal mastermind, Ladies and Gentlemen, would he be out there getting ready to take on Tacoma Police Force and for all he knows the state patrol and the sheriff's office and the rest of the world with a shotgun? I think that idea is ludicrous. I think if all of you call upon your experiences as people and you remember the trouble Tiny Razor was having on this stand, you are going to conclude that he was pretty much what you saw." *Id*. at 538. The prosecutor's statement that the idea is ludicrous is argument based upon a reasonable inference from the evidence. In addition, the prosecutor emphasized that the jurors were the decisionmakers.

–"Well, first of all, I don't have a lot of trouble with that. It's entirely conceivable in my mind that Tiny Razor may have said that. He is exactly the sort of person who, at least I formed an impression of him, would have in that sort of a situation jumped up and been part of the group. He is a lemming. He is going to go along with the pack, if there is a fight going." *Id*. at 540. This statement, taken as a whole, is a argument based upon a reasonable inference from the evidence. While the prosecutor's statement that he had formed an impression of Mr. Razor may have been objectionable, based on the context of the statement, it did not affect the jury's ability to decide the case fairly.

–"It's entirely conceivable that Tiny Razor jumped up and said, "Don't move, I'll blow your head off." I think he is that sort of individual. He is a blowhard, if you will, and he may very well have done it."

ORDER
Page - 11

Dkt. 3, File 2, Vol. III at 540.  This statement, taken as a whole, is a argument based upon a reasonable inference from the evidence.  While the prosecutor's statement that he thought Mr. Razor was "that sort of individual" may have been objectionable, based on the context of the statement, it did not affect the jury's ability to decide the case fairly

The prosecutor's argument, viewed in its entirety, was based upon the evidence adduced at trial and inferences from that evidence.  Some of the prosecutor's statements were inartful, and some of them may have approached the line of objectionable argument.  Nonetheless, it was clear from the argument that it was the province of the jury to make the credibility determinations.

The court concurs with petitioner that credibility of witnesses was pivotal in this case, and that petitioner had presented evidence contradicting the State's witnesses.  Even the strategy of petitioner's trial counsel appears to have been to attack the credibility of the inculpating witnesses and to bolster petitioner's credibility.  Nonetheless, the few remarks of the prosecutor, in a long argument that carefully reviewed the evidence, that may have been objectionable did not affect the jury's ability to decide the case fairly.  Accordingly, trial counsel's failure to object to the prosecutor's statements during closing argument did not fall below an objective standard of reasonableness, nor did any failure to object to those statements affect the result of the proceeding.

The Washington state court decision rejecting petitioner's claim that his trial counsel was deficient in failing to object to statements made by the prosecutor in closing argument was not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor was the decision based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  This claim does not warrant habeas relief.

### C. Trial counsel's ineffectiveness in agreeing to allow petitioner to be shackled in front of the jury

Petitioner claims that his trial counsel was ineffective when she permitted him to be shackled during trial.

As part of the state court personal restraint proceedings, an affidavit of prosecutor Jerry Ackerman was submitted.  Dkt. 44, Exh. 38.  In regard to security measures imposed during this trial, Mr. Ackerman stated as follows:

Prior to trial, there were discussions regarding necessary security measures. There was at least one chambers conference with Judge Worswick, representatives for the defense (who I recall as being ms. Mandel and/or Jack Hill, Director of DAC), deputy prosecutor Ellsworth Connelly, and myself, as well as police officers from the Tacoma Police Department and the Pierce County Sheriff's Office. These discussions were occasioned by law enforcement, and resulted from intelligence obtained from informants "on the street." By way of background, I recall that at that time downtown Tacoma was experiencing problems with drugs, prostitution, extortion, protection rackets, and criminal gangs. Informants familiar with these activities had notified police that there would be an effort by Teddy Powell (the defendant's brother and the alleged leader of the "Bullet" gang) to break out Jerome Powell during the course of the trial because "Jerome Powell was not going back to prison." In addition, there had apparently been a theft of plastic explosives from Fort Lewis and police had been informed that these plastic explosives would be used as part of the scheme to free Jerome Powell. Law enforcement believed there was cause for serious concern. At the meeting, various security measures were discussed. For example, police strongly urged the judge, attorneys, and other courtroom personnel to wear bullet proof vests during the trial. In addition, in order to ensure the defendant's right to a fair trial, Judge Worswick also laid some ground rules for permissible security measures. As I recall, Judge Worswick particularly wanted to minimize the opportunity for the jury to see the defendant in restraints. As I further recall, the defense responded to the security concerns by discounting the seriousness of the threats. To the best of my recollection, the defense did not interpose any formal legal objection to the security measures. I further recall that the placement of tables and parties at trial, and the timing and means of the jury's entering and exiting of the courtroom, were designed to minimize any opportunity for the jury to see the defendant in restraints.

Dkt. 44, Exh. 38 at 2-3.

During jury orientation, the trial judge informed the voir dire panel as follows:

The defendant is in custody and many of the witnesses who the state intends to call are also in custody; some of them from state institutions. Because of this and not because of any particular feature of it, but because in my judgment it is and should be a routine matter, we have determined to have certain routine security precautions taken in this case. They should not concern you at all. They are simply for the purpose of seeing that we have an orderly trial with no disturbances or no problems. We are not concerned with the defendant. The concern, if there is any concern, is that when people come down from the institution, sometimes they may have some friends out there who may be interested in the matter and who may want to show up for one reason or another, so we are making sure that we don't have any difficulties about that.

Dkt. 3, File 2, Vol. I at 3.

Ladies and Gentlemen, one other matter that I want to mention to you in connection with security and I neglected to do so. I told you that the defendant is in custody and several of the witnesses are in custody. Now, you should understand that when a person is in custody, there are routine procedures that apply regardless of what the situation is and one of those routine procedures is that when they are not in court and they are not in the jail, they have to be handcuffed. If you encounter anybody, we try to avoid this, but if you should see either Mr. Powell or any witnesses or anybody like that in handcuffs, it's a routine security precaution required of everyone in custody and has nothing to do whatever with anything else. Please understand that.

*Id.* at 14.

During voir dire, petitioner's trial counsel brought a motion to impanel a new jury, based in part, on statements made by the court regarding security issues. Petitioner's counsel agreed that some mention of security needed to be made but she objected to the "manner in which we have presented the security issue

ORDER
Page - 13

in combination with the custody of persons that will be appearing in court and this environment of street crime and a gang to the jury.  I feel that the net effect is to intimidate the jurors and to prejudice them unduly with respect to Mr. Powell."  Dkt. 3, File 2, Vol. A at 33.  The colloquy between the court and counsel continued as follows:

| | |
|---|---|
| THE COURT: | Well, I think I should get a little more detail from you, Counsel.  I will have a few remarks to make on the subject in a moment.  Are you objecting to the particular security arrangements? |
| MS. MANDEL: | No, I am not.  I don't feel that it would be my position to object to security arrangements.  I am certainly no expert in security. |
| THE COURT: | Is it fair to say that, in fact, the reason we have security is that the court invited counsel to indicate–counsel to indicate whether they felt it was appropriate and that you did feel it was appropriate, as well as Mr. Ackerman?  While you are thinking about it, is it also fair to say that you are the source of some of the information upon which the security decisions have been made? |
| MS. MANDEL: | Your Honor, I can't comment on that in open court.  I have no objections to the fact–I understand the reasons for the security.  What I am objecting to is the manner in which we have presented the security issue in combination with the custody of persons that will be appearing in court and this environment of street crime and a gang to the jury.  I feel that the net effect is to intimidate the jurors and to prejudice them unduly with respect to Mr. Powell. |

*Id.*

Petitioner claims that his counsel was ineffective in agreeing to the shackling because a criminal defendant has a constitutional right to appear before a jury free of shackles; there is no strategic reason to allow a person on trial for murder to appear before the jury in chains; and the prohibition against shackling is premised on the fact that it deprives the defendant of the presumption of innocence.  Dkt. 52, at 3-6.

In reviewing this claim, the Washington Court of Appeals concluded as follows:

A criminal defendant has a constitutional right to appear before a jury free of shackles, unless some impelling necessity demands restraint.  *State v. Breedlove*, 79 Wash.App. 101, 114, 900 P.2d 586 (1995).  Here before trial, he court judge conferred in camera with defense counsel, the prosecutor, and Tacoma Police officers to discuss security measures for the trial.  During these discussions, the court was informed of an alleged plan by Powell's brother, Teddy Powell, to "break out Jerome Powell during the course of the trial because 'Jerome Powell was not going back to prison.'"  In addition, as deputy prosecutor Ackerman states in his declaration, the police strongly urged the judge, attorneys, and other courtroom personnel to wear bullet proof vests during the trial because "there was cause for serious concern."  Defense counsel did not object to shackling Powell for the trial.  Under the circumstances presented to the court, counsel's consent to shackling Powell before the jury was not objectively unreasonable and his argument fails.

Dkt. 21, Exh. 3 at 8.

The first issue to be addressed here is whether petitioner is entitled to an evidentiary hearing on this claim.

A criminal defendant has a constitutional right to be free of shackles and handcuffs in the presence of the jury absent an essential state interest that justifies the physical restraints. *Ghent v. Woodford*, 279 F3d. 1121, 1132 (9th Cir. 2002). A claim of unconstitutional shackling is susceptible to harmless error analysis. *Duckett v. Godinez*, 67 F.3d 734, 749 (9th Cir. 1995); *Castillo v. Stainer*, 983 F.2d 145, 148 (9th Cir. 1992), *amended by* 997 F.2d 669 (9th Cir. 1993). An unjustified decision to restraint a defendant at trial requires reversal only if the shackles or handcuffs had substantial and injurious effect or influence in determining the jury's verdict. *Castillo*, 997 F.2d at 669 *(*quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

It is not clear from the record when or how often petitioner was present in the courtroom with restraints, and which, if any, of the jurors saw him in restraints. Nonetheless, the claim in this case is not that the restraints themselves violated petitioner's constitutional rights, but that his counsel was ineffective in failing to object to or prevent his being in restraints in the courtroom. The discussion related to security and restraints was held in chambers and was not recorded. However, the statement of the prosecutor submitted during the state personal restraint proceedings and the trial record provide sufficient information to review the ineffective assistance of counsel claim. The court notes that petitioner takes the position that shackling was not warranted and that petitioner's counsel should have attempted to prevent it, but he has not provided sufficient factual basis to show that or how the restraints violated his constitutional rights, that is, how the restraints had substantial and injurious effect or influence in determining the jury's verdict. If this court were to grant an evidentiary hearing each time a habeas petitioner was placed in restraints during trial, and each time defense counsel failed to object to the restraints, the court would be put in the position of re-trying that portion of the state case, this time, in hindsight. That is not the purpose of an evidentiary hearing. An evidentiary hearing is granted when a petitioner presents sufficient factual allegations that, if proved, would entitle him to relief. *Insyxiengmay v. Morgan*, 2005 WL 712483, *11 (9th Cir. Wash. 2005). In this case, petitioner has not alleged specific facts that would entitle him to relief; at best, petitioner seeks an evidentiary hearing to develop facts as to the effect the restraints had on petitioner's ability to communicate with his lawyer, to assist in his own

defense, or to testify on his own behalf.  *Insyxiengmay v. Morgan*, 2005 WL 712483, at *12-13.  This effort is no more than fishing for evidence to support a claim.  An evidentiary hearing is not warranted on this claim.

Regarding the merits of the claim, the record shows that (1) informants had informed the police that petitioner's brother would try to break him free from custody and that stolen plastic explosives would be used as part of the scheme to free Jerome Powell; (2) the court designed the room and timing to minimize any opportunity for the jury to see the defendant in restraints; and (3) the court attempted to decrease or eliminate effect on the jury by its instructions.  Petitioner's counsel was present in chambers when the security issue was discussed and she discussed the manner in which the security issue was presented to the jury.  The record does not support petitioner's claim that his counsel provided ineffective assistance in permitting him to be in restraints during trial.  Further, petitioner has not shown that, but for counsel's failure to object to the restraints, there is a reasonable probability that the result would have been different.

The Washington state court decision rejecting petitioner's claim that his trial counsel was deficient in permitting petitioner to be shackled during trial was not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did was the decision based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  This claim does not warrant habeas relief.

### D. Trial counsel's ineffectiveness in failing to investigate petitioner's alibi witnesses by not interviewing Judy Hampton McDonald and Jessie J. Beard and not investigating the route to the scene of the crime

In his brief in support of his petition, petitioner alleged that his counsel was ineffective, as follows:

> She did not interview Judy Hampton McDonald, though Ms. McDonald's name was evident in the discovery provided by the State.  Jessie Beard states she did not interview him.  Both would have been defense witnesses to support Mr. Powell's alibi that he could not have been in the Green River area where the murder occurred and in Tacoma at the same time and, therefore, he did not kill the victim.  But, trial counsel could not have known this, because along with not interviewing witnesses she never traced the route State's witnesses Clark and Razor said was allegedly taken from Tacoma to the murder scene in the Green River area.

Dkt. 2 at 24-25.

In support of his state court personal restraint petition, petitioner filed an affidavit of Ms. McDonald, which was signed on April 3, 1995.  Dkt. 3, Exh. 12.  Ms. McDonald stated that, on April 4, 1979 [the morning of Mr. Allison's murder], she left the Ebb Tide at 6 am, with Carol Ngirmeker, Eva Wolf, petitioner, her friend Ava, and Jessie Beard; that she went to her friends' apartment and stayed there for approximately 20 minutes; that Jessie Beard and Donald Clark took Ava and her to Ms. McDonald's home at 7 am; that she made a statement to the police on August 27, 1979, as a result of police threats and was therefore not voluntary; and that the August 27, 1979, statement was not correct.  *Id.*  In her statement to police on August 27, 1979, Ms. McDonald stated that she had been at the Ebb Tide until 6 am, and then she and James Beard got a ride back to her house with petitioner, in his yellow and black car; and that they arrived at her house at 7 am, when "Alvin and the Chipmunks were coming on TV."  *Id.* Petitioner claims that his counsel did not contact Ms. McDonald prior to trial, and that if she had contacted her, Ms. McDonald's testimony would have been important to establish an alibi defense for petitioner: that he would not have had time to drive to the murder scene, murder Mr. Allison, and then return to Tacoma by the time other witnesses placed him back in Tacoma.  Petitioner claims that his counsel never investigated the route to the murder scene in order to help establish the alibi defense.

On November 6, 1994, petitioner's counsel for his state court collateral attack and an investigator interviewed Jessie Beard at a correctional facility in Tennessee.  Dkt. 3, Exh. 25.  This "Declaration upon Oral Examination of Jessie James Beard" was submitted in support of petitioner's personal restraint petition.  Mr. Beard stated that, on the morning of Mr. Allison's murder, he left the club [Ebb Tide] before the club closed; that the club closed at 7 am; that he left with petitioner, Buffy, Carol, and Judy McDonald sometime around "4:30, maybe 5 o'clock, maybe later.  I'm not sure."; that he dropped Judy McDonald off at her home; that he and petitioner returned to the apartment on 27th and saw that Donald Clark, Robert Razor and Mr. Allison were involved in a confrontation in the parking lot; that petitioner went over to talk to his brother Teddy, who was also present in the parking lot; that petitioner asked Mr. Allison if he was all right and if he wanted to go to the doctor; that Mr. Allison said that he was fine, and he went home; that Mr. Beard went into the house, with petitioner and others, and helped straighten it up about 7:30 or 8 am; that it was maybe an hour or an hour and a half from the time he got to the house until he left.  When

asked what he would have told petitioner's attorney if she had contacted him in 1982, he stated "I would have told him that he didn't have anything to do with it, which he didn't."  Dkt. 3, Exh. 25 at 45.

In reviewing this claim, the Washington Court of Appeals concluded as follows:

> Powell next asserts his trial counsel acted deficiently in failing to investigate the route Powell allegedly took to the murder scene.  Powell maintains that trial counsel would have discovered information leading to impeachment of one of the State's witnesses.  Powell also maintains that he had an alibi.
>
> The presumption of effective assistance may be overcome if counsel failed to sufficiently investigate the facts in preparing for trial.  *State v. Maurice*, 79 Wash. App. 544, 552, 903 P.2d 514 (1995).  In the present case, the evidence before the court did not conclusively establish the route to the murder scene or the duration of travel.  Witnesses gave varying accounts of the route and the time traveled between Tacoma and the murder scene.  Therefore, even if Powell's counsel had investigated Powell's route, such investigation would not have conclusively established the route or time.  Even assuming, as Powell submits, that the investigation would have further corroborated his account, this evidence would have been compared with other accounts by other witnesses.  It cannot be said that the failure to investigate the route was deficient or that it prejudiced Powell's defense such that the trial's outcome would have been different.

Dkt. 2, Exh. 2 at 9-10.

In determining whether counsel's representation fell below an objective standard of reasonableness, the reviewing court will defer to counsel's strategic decision to present, or to forgo, a particular defense theory when the decision falls within the wide range of professionally competent assistance.  *Strickland*, 466 U.S. at 689; *Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995); *United States v. Layton*, 855 F.2d 1388, 1419-20 (9th Cir. 1988), *cert. denied* 489 U.S. 1046 (1989);  *Campbell v. Kincheloe*, 829 F.2d 1453, 1462 (9th Cir. 1987), *cert. denied* 488 U.S. 948 (1988).

The actual route taken to the murder scene, the speed of travel, and the actual duration of travel time were never determined.  Moreover, the testimony elicited from the various witnesses about the timing of the incidents on the morning of the crime varied and/or was vague.  *See* Dkt. 3, File 2, Vol. II at 314, 341, 353, 393 & 446; *Id.*, Vol. III at 454, 458, 475, 485 & 493.  Ms. McDonald and Mr. Beard's testimony would have been unhelpful, since their estimates of time are as vague as that of the witnesses who testified.  Petitioner's trial counsel apparently made a reasonable strategic decision to focus on more promising theories of defense, and to forego developing an alibi theory that, at most, would have lent some corroboration of petitioner's testimony, but more likely would have added little to support the defense.  Further, Mr. Beard was a co-defendant in this case; it is questionable whether petitioner's counsel would have been afforded the opportunity to talk with him before trial.  Even if she had, Mr. Beard's statement that petitioner had nothing to do with the murder was part and parcel of his self serving statement denying

1    involvement in the incident. Counsel apparently made a reasonable strategic decision to proceed with other

2    witnesses and theories of the case. Accordingly, trial counsel's failure to interview these witnesses and

3    investigate the route to the murder scene did not fall below an objective standard of reasonableness, nor

4    did any failure to on counsel's part affect the result of the proceeding.

5        The Washington state court decision rejecting petitioner's claim that his trial counsel was deficient

6    in failing to interview witnesses and investigate the route to the murder scene, was not contrary to or an

7    unreasonable application of clearly established federal law, as determined by the Supreme Court, nor was

8    the decision based on an unreasonable determination of the facts in light of the evidence presented to the

9    state courts. This claim does not warrant habeas relief.

10            **E. Trial counsel's ineffectiveness in failing to bring pretrial motions in limine to**

11                **exclude irrelevant prejudicial evidence**

12        Petitioner's claim is as follows:

13        Mr. Powell's involvement with a group of people the State characterized as a "gang"; his
        sexual relations with white women; and/or his alleged prostitution activities were not relevant to the
14       State's prosecution of him for murder in the First Degree of Charles Allison. Yet these irrelevant,
        highly prejudicial facts were brought out on numerous occasions throughout the trial, because trial
15       counsel did not bring motions in limine.

16   Dkt. 2, at 24.

17        In reviewing this claim, the Washington Court of Appeals concluded as follows:

18        Powell contends his trial counsel performed deficiently in failing to object to evidence of
        interracial sexual relations among co-defendants, alleged gang activities, and other criminal
19       activities. Witnesses may be examined regarding motive, bias, or interest. *See State v. Calhoun*, 13
        Wn.App. 644, 651, 536 P.2d 668 (1975). Here, Powell, other co-defendants, and several witnesses
20       were part of a gang known as "The Bullets," who banded together as a family to help one another.
        Therefore, evidence of Powell's gang membership, relations among group members, and their
21       collective activities is probative of the individuals' motive or bias in providing testimony at trial.
        Moreover, where defense counsel's conduct can be characterized as legitimate trial strategy or
22       tactics, it cannot serve as a basis for an ineffective assistance claim. *State v. Garrett*, 124 Wn.2d
        504, 520, 881 P.2d 185 (1994). Accordingly, counsel's conduct in failing to seek the exclusion of
23       such evidence was not unreasonable or deficient.

24   *Id.*, Exh. 2 at 7.

25        In this case, the state court found that this evidence was properly admitted under Washington law;

26   this ruling is binding on the federal court. *See Estelle v. McGuire*, 112 S.Ct. 375 (1991); *Middleton v.*

27   *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985)(Habeas relief is unavailable for error in the interpretation or

28   application of state evidentiary rules). Because the evidence was admissible, the trial judge would have

     overruled any objection petitioner's trial counsel might have made. Accordingly, trial counsel's failure to

ORDER
Page - 19

object to admission of the evidence was not deficient representation.  Further, petitioner has not shown that there is a reasonable probability that, but for counsel's failure to object to admission of the evidence, the result would have been different.

The Washington state court decision rejecting petitioner's claim that his trial counsel was deficient for failing to object to the admission of allegedly prejudicial evidence was not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor was the decision based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  This claim does not warrant habeas relief.

### F.  Conclusion

The court has carefully reviewed the record and each claim petitioner has made that his trial counsel was ineffective.  As discussed above, these claims do not warrant habeas relief.

### 2.  Ineffective Assistance of Appellate Counsel

A defendant is entitled to effective assistance of counsel on direct appeal.  *Evitts v. Lucey*, 469 U.S. 387, 397 (1985).  The right to effective assistance of counsel on appeal arises out of the Fourteenth Amendment.  *Martinez v. Court of Appeal of Calif.*, 120 S.Ct. 684, 688-92 (2000).  Like a claim of ineffective assistance at trial, a claim that counsel was ineffective on appeal is also reviewed under a two-prong standard.  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Smith v. Robbins*, 528 U.S. 259 (2000); *Morrison v. Estelle*, 981 F.2d 425, 427 (9th Cir. 1992), *cert. denied*, 508 U.S. 920 (1993); *Miller v. Keeney*, 882 F.2d 1428, 1433-34 (9th Cir. 1989).  The petitioner must first prove that counsel's performance fell below an objective standard of reasonableness. *Flores-Ortega*, 528 U.S. at 477.  The court must judge the reasonableness of counsel's conduct on the facts of the case, viewed as of the time of counsel's conduct.  *Id.*  Judicial scrutiny of counsel's performance must be highly deferential.  *Id.* (quoting *Strickland*, 466 U.S. at 689).  The petitioner must also show that counsel's deficient performance caused prejudice.  *Flores-Ortega*, 528 U.S. at 477.

Petitioner claims that his appellate counsel was constitutionally deficient because he did not order the entire trial transcript, and, as a result, meritorious issues were not raised on appeal.  Petitioner contends that appellate counsel ordered only the transcript of the Omnibus Hearing and trial motions, and did not order the trial transcript.  As a result, petitioner claims his counsel failed to raise potentially

ORDER
Page - 20

meritorious claims on appeal.  Petitioner contends that, had those meritorious issues been raised, he would have received the benefit of a lower standard of review of the issues.

In reviewing this claim, the Washington Court of Appeals concluded as follows:

> The exercise of independent judgment in deciding which issues form the basis of a successful appeal is at the heart of the attorney's role in our legal process.  *In re Personal Restraint of Lord*, 123 Wn.2d 296, 314, 868 P.2d 835 (1994).  Consequently, the failure to raise all possible nonfrivolous issues on appeal does not constitute ineffective assistance of counsel.  *Lord*, 123 Wn.2d at 314.  To prevail on appellate ineffective counsel claim, the petitioner "must show the merit of the underlying legal issues his appellate counsel failed to raise or raised improperly and then demonstrate actual prejudice."  *Lord*, 123 Wn.2d at 314.

> Citing *Eskridge v. Washington State Bd. Of Prison Terms and Paroles,* 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) and *Entsminger v. Iowa*, 386 U.S. 748, 87 S.Ct. 1402, 18 L.Ed.2d 501 (1967), Powell argues that appellate counsel provided ineffective assistance in failing to request a full transcript.  These authorities, however, do not support his claim, nor do we find case law which stands for the same.  Powell does not demonstrate prejudice, and his argument fails.

Dkt. 2, Exh. 2 at 10-11.

Petitioner has cited no clearly established law that requires appellate counsel to order and review the entire transcript in each case before filing an appeal.  At issue in this case, therefore, is whether the failure of petitioner's appellate counsel in this case fell below an objective standard of reasonableness and if petitioner was prejudiced by counsel's alleged deficient performance.

In this case, even if his appellate counsel fell below an objective standard of reasonableness in failing to order the entire trial transcript, petitioner has failed to show that he was prejudiced by counsel's deficient performance.  The potentially meritorious issues plaintiff alleges are as follows:

### A.  Prosecutorial Misconduct, Use of Restraints, Ineffective Assistance of Counsel

Petitioner claims that his appellate counsel should have raised the following issues and that he would have had a more favorable standard of review if these issues had been raised on appeal rather than on collateral attack: prosecutorial misconduct in expressing personal opinion as to the credibility of state and defense witnesses; prosecutorial misconduct in questioning petitioner on cross-examination as to his opinion of credibility of certain witnesses; use of restraints; trial counsel's ineffectiveness in permitting petitioner to be shackled at trial; trial counsel's ineffectiveness in failing to object to prosecutor's improper statements as to petitioner's personal opinion of the credibility of the witnesses; trial counsel's ineffectiveness in not investigating alibi defense; and trial counsel's ineffectiveness in not bringing pretrial motions in limine to exclude irrelevant prejudicial evidence.  The court has discussed the merits of these

1    issues above.  Petitioner has not shown that, if any or all of these issues had been raised on appeal, they

2    would have resulted in reversal of petitioner's conviction under state law.  The cases petitioner cites in

3    support of his claim of prejudice are distinguishable on the facts.

4                    **B.  Cross-Examination of Co-Defendant**

5           Petitioner also claims that, if appellate counsel had had the trial record, he could have raised the

6    issue that he was denied his constitutional rights when the trial court refused to permit him to cross

7    examine a co-defendant regarding a favorable plea agreement, and that, had he appealed that issue, his

8    conviction would have been reversed.

9           The issue relates to a plea bargain entered into by petitioner's codefendant, Donald Clark.  The

10   direct examination related to this issue is as follows:

11          Q.    Mr. Clark, you pled guilty to a charge in connection with your involvement in this, haven't
                  you?
12          A.    First degree manslaughter.
            Q.    And in fact you are not currently in the Pierce County Jail, are you?
13          A.    At the time I am on a medical leave.

14   Dkt. 3, File 2, Vol. II at 357.

15          On cross examination, petitioner's counsel questioned Mr. Clark as follows:

16          Q.    Didn't you consult with your attorney about whether or not you should talk about Teddy
                  Powell?
17          A.    On certain things.  There are certain things that I probably wouldn't answer questions to
                  right now either.
18          Q.    And you also didn't want to talk about any of the details of the plea bargain you made, isn't
                  that true?
19          A.    I didn't make any plea bargain.
            Q.    You are saying that the prosecuting attorney allowed you to plead guilty to manslaughter
20                and that there was no plea bargain involved?
            A.    The only bargain that was made was that they offered me that I could stay in the Pierce
21                County Jail under protective custody on account of threats on my life.
            Q.    And you got to stay.  You didn't have to go to prison.
22          A.    Well, I'd say that from what I have talked.
            Q.    The question is, you didn't have to go to prison, isn't that true?
23          A.    What do you call the Pierce County Jail for 30 months?
            Q.    Do you know the difference between a jail and a prison?
24          A.    Well, there are times when people would rather stay in prison than the Pierce County Jail.
            Q.    Mr. Clark, you didn't have to go to prison.  That is the question.
25          A.    No.  I stayed in Pierce County Jail.  I am still in jail.
            Q.    And you pled guilty to a crime which is a maximum penalty of ten years.
26                MR. ACKERMAN: Objection, ;Your Honor.
                  THE COURT:  Objection sustained.
27                MS. MANDEL: Your Honor, I'd like to be heard on that.
                  THE COURT: It's argumentative, proceed.
28
     Dkt. 3, File 2, Vol. II at 372-73.

In her closing argument, defense counsel argued as follows:

Why would you believe Donald Clark? Donald Clark wouldn't even let us see his eyes. Donald Clark had a lot to gain through this story. Donald Clark got a plea bargain. Donald Clark is in the Pierce County Jail. Donald Clark pled guilty to manslaughter.

Dkt. 3, File 2, Vol. III at 529.

In reviewing this claim, the Washington Court of Appeals concluded as follows:

Where a witness who entered into a plea bargain agreement testifies against the defendant, the defendant is entitled to cross-examine the witness regarding the extent of the plea bargain and the witness's motives for the plea. *State v. Portnoy*, 43 Wn.App. 455, 718 P.2d 805, *review denied*, 106 Wn.2d 1013 (1986); *see also State av. Ahlfinger*, 50 Wn.App. 466, 475 n.4, 749 P.2d 190, *review denied*, 100 Wn.2d 1035 (1988)(State's interest in keeping information about plea bargain from jury is outweighed by defendant's right to confront witness and alert jury to potential bias).

Here, although Powell correctly asserts he was denied the right to cross-examine Clark regarding his plea bargain with the State, the denial of cross-examination did not prejudice him because, as the State notes, the jury had already been told about Clark's plea to a lesser charge and sentence.

Dkt. 2, Exh. 2 at 14-15.

Petitioner claims that he was prejudiced because, had appellate counsel raised this issue on appeal, his conviction would have been reversed, citing *State v. Brooks*, 256 Wn.App. 550 (1980). In *Brooks*, the Washington Court of Appeals reversed a conviction because the defendant, while permitted to cross examination of a codefendant on a plea bargain, was not permitted to cross examine the codefendant about the dropping of the deadly weapon allegation pursuant to the plea bargain agreement that had obviated a mandatory 5-year minimum term for the codefendant if he were sentenced to prison. In this case, all significant facets of Mr. Clark's plea bargain were before the jury. The testimony showed that Mr. Clark pled guilty to manslaughter, and he received a 30 month sentence in the county jail. While the prosecutor's objection to defense counsel's question regarding the maximum length for a manslaughter conviction was sustained, the maximum length of a manslaughter term had little or no import in this case–Mr. Clark received a 30-month term in the county jail for that conviction. While the court may have erred in sustaining the objection to the maximum term of a manslaughter conviction, petitioner was not prejudiced by the court's ruling.

Petitioner has not shown that, had his appellate counsel raised the issue of cross-examination related to Mr. Clark's plea agreement on appeal, he would have received the benefit of a more favorable standard of review than he did when the issue was raised on collateral attack.

1

### C.  Conclusion

2       The court has carefully reviewed the record and each claim petitioner has made that his appellate

3   counsel was ineffective.  As discussed above, these claims do not warrant habeas relief.

4       **3.  Confrontation Claim**

5       In his objections to the Report and Recommendation, petitioner claims that he was denied his

6   constitutional right to confront and cross-examine Mr. Clark regarding the terms of his plea agreement.  As

7   discussed above, the cross examination issue was raised in the context of petitioner's claim of ineffective

8   assistance of his appellate counsel.  The court has carefully reviewed the record.  Petitioner did not raise

9   this claim, apart from his claim of ineffective assistance of appellate counsel.  *See* Dkt. 21, Exh. 19, at i-ii

10  x-xi & 26-28.  *See also id.*, Exh. 18 & Dkt. 2, Exh. 8.  The claim is therefore unexhausted and

11  procedurally barred in this proceeding.  *O'Sullivan v. Boerckel*, 119 S.Ct. 1728, 1733-34 (1999); *Coleman*

12  *v. Thompson*, 501 U.S. 722, 750-751 (1991); *Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993).

13      **3.  Limitation of evidence in reference hearing regarding victim's cause of death**

14      Petitioner contends that he was limited in the state court reference hearing as to the cause of the

15  victim's death.

16      Petitioner first maintains that, if he had been permitted to present testimony of Judy Hampton

17  McDonald and Denise Scaffidi, he would have been able to develop the facts necessary to establish his

18  ineffective assistance of trial counsel claim related to his alibi defense. Ms. McDonald's testimony has been

19  described above.  Denise Scaffidi was a private investigator who traced the route described by Donald

20  Clark at the 1982 trial.  At the reference hearing, petitioner offered her testimony in support of the claim

21  that petitioner couldn't possibly have been at the murder scene at the time the murder is alleged to have

22  occurred.  See Dkt. 3, File 1, at 231-237.  The issue of the time and distance between Tacoma and the

23  place of the murder has been discussed above; petitioner has not shown that his trial counsel was

24  ineffective as to this issue.

25      Second, the decision of the judge at the reference hearing to exclude James Beard's statement as

26  described above was not objectionable, since Mr. Beard was unavailable and the evidence petitioner

27  offered was not admissible under the rules of evidence.  *See* Dkt. 3, File 1, Vol. 5 at 468-77.

28      This claim does not warrant habeas relief.

**4.  Evidentiary Hearing**

Petitioner requests an evidentiary hearing to develop petitioner's the facts regarding (1) the effect the restraints had on petitioner's ability to communicate with his lawyer, to assist in his own defense, or to testify on his own behalf; (2) whether his trial counsel objected to the use of restraints at trial, and whether trial counsel's failure to object to the prosecutor's allegedly improper questioning and her failure to object to the prosecutor's allegedly improper closing arguments was a fully informed strategic choice; and (3) whether appellate counsel winnowed the good issues from the bad or failed to review them at all.  Dkt. 52, at 12-13.  The court has discussed the issues related to the restraints above and has concluded that the record is sufficiently developed to review the claims related to shackling.  Further, the record is sufficient to review the ineffective assistance of trial and appellate counsel.  An evidentiary hearing is not warranted.

Therefore, it is hereby

**ORDERED** that the recommendation of the magistrate judge in the Report and Recommendation of the Magistrate Judge (Dkt. 54) is **ADOPTED**, based upon the reasoning herein.  The petition for writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.   The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 27th day of April, 2005.

Robert J. Bryan
U.S. District Judge